IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ZACHARY BATTLE, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. GJH-19-2966 |
| FRANK BISHOP, DEAN MCKENZIE, JACOB NORTHCRAFT, AND JOHN DOE, | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * *

**MEMORANDUM OPINION**

Plaintiff Zachary Battle, an inmate currently incarcerated at North Branch Correctional Institution, filed this 42 U.S.C. §1983 action against Warden Frank Bishop, Correctional Officer Dean McKenzie, Correctional Officer Jacob Northcraft, and John Doe, alleging excessive force in violation of his Eighth Amendment right against cruel and unusual punishment. ECF No. 1. Pending before the Court are Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 12, and Plaintiff's Motion to Strike Appearance of Attorney, ECF No. 20. No hearing is necessary. See Loc. R. 105.6 (D. Md. 2018). For the following reasons, Defendants' motion is granted, in part, and denied, in part, and Plaintiff's motion is granted.

1

I.      **BACKGROUND**[1]

On March 28, 2019, Plaintiff Zachary Battle was confined in a single-occupancy shower, ECF No. 1 at 1,[2] when he asked to speak to the sergeant of the housing unit. *Id.* Correctional Officer Dean McKenzie then administered pepper spray into Plaintiff's mouth and face, and Sergeant Kennel[3] turned the shower off, preventing Plaintiff from rinsing his mouth and body and leaving him to choke. *Id.* As the officers "smirk[ed] and laugh[ed]," Correctional Officer Jacob Northcraft placed a "homemade security [bubble][4] cage in front of the tiny holes in the [shower] door," making it even more difficult for Plaintiff to breathe. *Id.* at 1–2. Plaintiff was eventually escorted to the medical room and given two breathing treatments. *Id.* at 2. The medical record attached to the Complaint states that Plaintiff arrived at the medical office wearing a "spit mask," that pepper spray covered his torso and face, that he is a known asthmatic, and that he was "[a]llowed to use his Albuterol inhaler." ECF No. 1-1 at 2. Plaintiff alleges that, since the incident, he has had swollen glands in his neck and suffers from upper and lower back pain, but his requests for medical care have gone unanswered. ECF No. 1 at 4.

On April 4, 2019, Plaintiff participated in an inmate hearing to determine whether he had committed a rule violation during the March 28, 2019 incident. ECF No. 1 at 3–4; ECF No. 1-1 at 1. Plaintiff was charged with violating "Rule 101" as reported by Defendant McKenzie. ECF No. 1-1 at 1. The Complaint and attached documents do not state what Rule 101 involves, but it

---

[1] Unless stated otherwise, all facts are taken from Plaintiff's Complaint or documents attached to and relied upon in the Complaint and are presumed to be true. *See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).
[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[3] Plaintiff references Sergeant Kennel in the Complaint and may have intended to name him as a defendant, but the Complaint does not include him in the case caption, and he has not been served. *See* ECF No. 1.
[4] Although the Complaint states only that Defendant Northcraft placed a "bubbe-cage" [sic] in the door, Plaintiff's ARP complaint, attached to Defendants' Motion, ECF No. 12-2, provides further context for this allegation, stating that Defendant Northcraft "placed a security bubble on the shower, preventing the mace from escaping the area," *id.* at 1.

appears that Plaintiff was accused of spitting on Defendant McKenzie, as prison records show that the inmate hearing focused on whether Plaintiff had spit on the "reporting officer," *id.* at 1, and that, as stated above, Plaintiff arrived at the medical office after the incident wearing a "spit mask," *id.* at 2. Additionally, an ARP complaint Plaintiff filed on April 12, 2019, alleges Defendant McKenzie "intentionally wrote a false statement and perjured himself" in a Notice of Infraction and Use of Force Report "by saying [Plaintiff] spat on him." ECF No. 6 at 5. During the inmate hearing, Officer Jamie Farris reviewed the video footage of the incident and found, "[a]t no time in the video footage did the reporting officer look at his shirt. I believe that any reasonable person that was spit on would have at least looked at the location that the spit had hit. At one point you can clearly see the reporting officer and his shirt in clear view of the camera and you cannot see any spit located on his shirt." *Id.* According to the Inmate Hearing Record, Officer Farris offered Plaintiff an "informal resolution"—an incident report—and he accepted. *Id.*

Plaintiff filed a *pro se* Complaint in this Court on October 9, 2019, against Warden Frank Bishop, Correctional Officer Dean McKenzie, and Correctional Officer Jacob Northcraft, and an officer identified only as John Doe.[5] ECF No. 1. Liberally construed,[6] Plaintiff alleged excessive force, deliberate indifference, denial of medical care, and denial of due process in violation of his constitutional rights under 42 U.S.C. §1983 as well as common law claims of assault and battery. *Id.* at 1–2. However, Defendants' Motion understands Plaintiff's Complaint to include only one claim—excessive force in violation of the Eighth Amendment, brought under 42 U.S.C. §1983,

---

[5] The Complaint does not describe John Doe's role in the events, but the ARP complaint states that after Defendant Northcraft blocked the door and Plaintiff was left in the shower, "Officer 'John Doe' came and looked at me and was sitting on the desk watching me gag and have extreme chest pains and breathing issues." ECF No. 12-2 at 1. Plaintiff said he was asthmatic and needed medical attention, but John Doe did not get him medical help. *Id.*
[6] *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]" (internal citations and quotation marks omitted)).

ECF No. 12-1 at 1–2—and Plaintiff's Opposition accepts this characterization of the allegations in the Complaint "[f]or purposes of this discussion." ECF No. 17 at 1.

On March 12, 2020, Defendants filed a Motion to Dismiss, or in the alternative, Motion for Summary Judgment. ECF No. 12. On April 9, 2020, counsel for Plaintiff filed a Notice of Appearance, ECF No. 16, and an Opposition to Defendants' motion on April 9, 2020, ECF No. 17. Defendants did not file a reply. On April 20, 2020, Plaintiff filed a *pro se* Opposition to Defendant's motion. ECF No. 19. Counsel for Plaintiff filed a Motion to Strike Appearance on June 11, 2020. ECF No. 20.

## II.     STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and must "draw all reasonable

inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants' Motion is styled as a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* When the moving party styles its motion as alternatively seeking dismissal or summary judgment and attaches additional materials, as is the case here, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir.

1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). When ruling on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286 (2d Cir. 2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition," *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and quotation marks omitted). "To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery could possibly create a genuine issue of material fact sufficient to survive summary judgment or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015).

### III.  DISCUSSION

#### A. Plaintiff's *Pro Se* Opposition

In addition to the Opposition to Defendants' motion filed by counsel, ECF No. 17, Plaintiff filed his own *pro se* pleading, ECF No. 19. "Although there is a paucity of Fourth Circuit precedent directly addressing this issue, every Circuit Court of Appeals to have considered the phenomenon of a *pro se* motion filed by a represented party has determined that a court does not have to accept or entertain these motions." *United States v. White*, No. 7:08–CR–00054, 2010 WL 1462180, at *1 (W.D. Va. Apr. 12, 2010) (listing decisions issued by the First, Third, Fifth, Seventh, Eighth, and Tenth Circuits). Moreover, the Local Rules of this Court prohibit the Clerk of the Court from accepting *pro se* filings by represented parties. Local Rule 102.1(a)(i) (D. Md. 2018). Accordingly, because the Local Rules prohibit the filing, and because precedent instructs that courts are not required to engage with it, the Court need not consider Plaintiff's *pro se* Opposition.

#### B. Warden Frank Bishop

Defendants argue that the claims against Defendant Bishop must be dismissed because the Complaint does not allege personal action by the warden that would give rise to liability under § 1983. ECF No. 12-1 at 8. Plaintiff's Opposition "acknowledges that Warden Bishop is not a proper party to this action" and "concedes that the complaint against him should be dismissed." ECF No. 17 at 3. However, Plaintiff, in his *pro se* Opposition, argues, "[a]lthough Warden Bishop did not commit the due process violations, he became responsible for them when he failed to correct them in the course of his supervisory responsibilities, and affirmed the plaintiff's disciplinary conviction." ECF No. 19 at 1. Although, for the reasons stated above, the

Court need not consider Plaintiff's *pro se* filing, the Court will briefly address why this argument is unpersuasive.

The doctrine of *respondeat superior* does not apply to § 1983 claims. *Wellington v. Daniels*, 717 F.2d 932, 935 (4th Cir. 1983) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)). Rather, supervisory liability "is premised on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)) (internal quotation marks omitted). Supervisory liability may attach where (1) a "supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff"; (2) "the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) "there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." *Randall v. Prince George's Cty., Md.*, 302 F.3d 188, 206 (4th Cir. 2002) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)) (internal quotation marks omitted).

Here, Plaintiff has not sufficiently pled supervisory liability as to Defendant Bishop. The Complaint states only that Defendant Bishop, along with the other defendants, "fail[ed] to take action to curb the physical abuse of prisoners by guards." ECF No. 1 at 5. However, it does not allege Defendant Bishop knew or should have known about the March 28, 2019 incident,[7] much less of "conduct [that] is widespread, or at least has been used on several different occasions."

---

[7] Although Plaintiff submitted ARP complaints to the warden, they were procedurally dismissed by the ARP Coordinator, not the warden, and therefore do not show knowledge. *See* ECF No. 6 at 5; ECF No. 12-2. Similarly, the evidence does not show the warden was aware of the inmate hearing or its findings. *See* ECF No. 1-1.

*Shaw*, 13 F.3d at 799.[8] Moreover, Plaintiff has failed to allege facts showing that Defendant Bishop's response was "so inadequate as to show deliberate indifference to or tacit authorization" of the conduct or facts that would support a causal link between Defendant Bishop's inaction and the excessive force suffered by Plaintiff. *Id.*; *see also Deakins v. Pack*, 957 F. Supp. 2d 703, 761 (S.D. W. Va. 2013) ("A supervisor's mere knowledge of a subordinate's unconstitutional conduct is not enough." (internal citations omitted)). Because Plaintiff does not allege facts showing Defendant Bishop was personally involved in the events at issue or that he was responsible for them on the basis of supervisory liability, the claims against him must be dismissed.[9]

## C. Exhaustion of Administrative Remedies

### 1. Mandatory Exhaustion Under the Prisoner Litigation Reform Act

Defendants argue that Plaintiff's § 1983 claim must be dismissed because Plaintiff failed to exhaust his administrative remedies as required by the Prisoner Litigation Reform Act

---

[8] As Plaintiff points out, the Second Circuit has indicated a supervisor may be liable if, "after learning of the violation through a report or appeal, . . . [he] fail[s] to remedy the wrong." *Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986); *see also Vance v. Peters*, 97 F.3d 987, 994 (7th Cir. 1996) (finding the plaintiff must offer evidence showing "the defendant officials knew of a constitutional deprivation and approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated."). However, it does not appear that the Fourth Circuit or district courts in this Circuit have found that failure to remedy a single violation may form the basis of a supervisory liability claim. Instead, the courts of this Circuit require a plaintiff to allege that the supervisor failed to remedy a widespread pattern of misconduct. *See, e.g.*, *Armstrong v. City of Greensboro*, 190 F. Supp. 3d 450, 467 (M.D.N.C. 2016) (quoting *Slakan*, 737 F.2d at 373) ("[T]he Fourth Circuit has determined that '[o]rdinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents.'" (quoting *Slakan*, 737 F.2d at 373)); *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) ("Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury."); *Ward v. Byars*, No. 8:12-CV-01480-DCN, 2013 WL 1403220, at *4 (D.S.C. Mar. 11, 2013), *report and recommendation adopted*, No. 8:12-CV-1480 DCN, 2013 WL 1404918 (D.S.C. Apr. 5, 2013) (finding the plaintiff had failed to establish the third element—cause—where the allegations involved the failure to remedy a single incident); *but cf. Chapman v. Bacon*, No. 3:14CV641, 2017 WL 559703, at *8 (E.D. Va. Feb. 10, 2017) (denying motion to dismiss in a failure-to-protect action where the plaintiff alleged a defendant was advised of a dangerous situation between the plaintiff and his cellmate and failed to move one of them, resulting in the plaintiff being assaulted). Even if failure to remedy a single violation was sufficient under Fourth Circuit precedent, however, Plaintiff has not sufficiently alleged that Defendant Bishop in fact learned of the violation.

[9] Because the claims against Defendant Bishop are dismissed on the basis of failure to allege supervisory liability, the Court does not consider Defendants' arguments concerning qualified immunity.

("PRLA") prior to filing his Complaint. ECF No. 12-1 at 5. The PRLA provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.* § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 527 (D. Md. 2003), *aff'd*, 98 Fed. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–216 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Additionally, an inmate must complete the prison's internal appeals process before bringing suit. *See Jones*, 549 U.S. at 202 (noting the PLRA requires prisoners to exhaust prison grievance procedures before filing suit); *see also Girard v. Chuttey*, 826 F. App'x 41, 44–45 (2d Cir. 2020) ("Because Girard filed his initial complaint in this action before the CORC had either decided his

appeal or the thirty-day period to respond had elapsed, he failed to exhaust his remedies as to this grievance."); *Mitchell v. Bishop*, No. CV PX-18-933, 2019 WL 4059902, at *4 (D. Md. Aug. 28, 2019) ("Nor can [the plaintiff] save the claims by exhausting administrative remedies while this case is pending."); *cf. Chase*, 286 F. Supp. 2d at 530 ("The critical question is not whether the Maryland prisoner grievance process currently is available to Chase, but rather whether those remedies were available to him on July 22, 1998, at the time when he filed this suit in federal court.").

A claim that has not been exhausted may not be considered in court—"exhaustion is mandatory." *Jones*, 549 U.S. at 211, 220; *see also Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) ("The mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion[.]" (quoting *Miller v. French*, 530 U.S. 327, 337 (2000))). However, "that edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." *Ross*, 136 S. Ct. at 1856; *see* 42 U.S.C. § 1997e(a).

An administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). However, the *Ross* Court also identified three kinds of circumstances in which an administrative remedy is unavailable, and an inmate's duty to exhaust available remedies "does not come into play." *Id*. First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* The third circumstance arises when "prison administrators thwart

11

inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

### 2. Administrative Remedies in Maryland Prisons

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has made an "administrative remedy procedure" available to Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S."), §§ 10-201 *et seq.*; Md. Code Regs. ("COMAR") 12.07.01.01(B)(1) (defining ARP). The grievance procedure applies to the submission of grievances against Division of Correction officials or employees. C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01(B)(8). An inmate must exhaust the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02(D).

To exhaust the ARP process, a prisoner must first file an ARP complaint with the warden of the prison within 30 days of the incident or when the prisoner gains knowledge of the injury giving rise to the complaint. *See* COMAR 12.02.28.09(B). Second, if the ARP complaint is denied, or the inmate does not receive a timely response, a prisoner must file an appeal with the Commissioner of Correction within 30 days. *See* COMAR 12.02.28.14.B(5). If the appeal is denied, the prisoner must appeal within 30 days to the Inmate Grievance Office ("IGO"). *See* C.S. §§ 10-206, 10-210; COMAR 12.02.28.05(E), 12.02.28.18, 12.07.01.04, 12.07.01.05(B). Inmates may then seek judicial review of the IGO's final determinations in a Maryland Circuit

Court. C.S. § 10-210. However, "an inmate need not seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement." *Aurel v. Mailroom N. Branch*, No. CV ELH-14-2813, 2016 WL 3957647, at *8 (D. Md. July 21, 2016) (citing *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002).

Relevant to Plaintiff's claims, the ARP process applies to allegations that correctional officers used excessive force. COMAR 12.02.28.04(A)(7). Where, as here, the ARP complaint regarding an alleged use of excessive force was referred to the Intelligence and Investigative Division ("IID") and procedurally dismissed under COMAR 12.02.28.11.B(1)(h), the facility ARP coordinator is required to notify the inmate that he may appeal the dismissal to the Commissioner using the following statement:

> The request is procedurally dismissed at this level. It has been determined that the subject matter of your Request is under investigation by the Department's Intelligence and Investigative Division under case number [insert case number here] and no further action will be taken under the Administrative Remedy Procedures at this level. You may appeal this decision to the Commissioner of Correction.

COMAR 12.02.28.11(B)(2)(d).

3. **Exhaustion of Plaintiff's Claims**

Plaintiff was allegedly assaulted on March 28, 2019. ECF No. 1 at 1. Therefore, he had 30 days to file an ARP complaint about the incident, which he did on April 7, 2019. ECF No. 12-2. Plaintiff's ARP complaint alleges that he was pepper sprayed without cause and that the officers delayed in getting him medical care. *See id.* On April 9, 2019, the complaint was procedurally dismissed under COMAR 12.02.28.11.B(1)(h). *See* ECF No. 12-2 at 1. The dismissal notice did not include the requisite language specified in COMAR 12.02.28.11(B)(2)(d) for dismissals under COMAR 12.02.28.11.B(1)(h)—while it stated that the subject matter of the request was being reviewed by IID, it did not inform Plaintiff that he could

appeal the decision to the Commissioner of Correction. *See id*. Plaintiff filed a second ARP complaint on April 10, 2019, alleging that on March 28, 2019, Defendant McKenzie falsely stated that Plaintiff spat on him and caused the other officers to turn the shower off after he was pepper sprayed. ECF No. 6 at 5. On April 12, 2019, it was similarly dismissed based on COMAR 12.02.28.11.B(1)(h). *Id.*[10] Neither party mentions this second ARP complaint in their filings. To the contrary, Defendants point to an affidavit from the ARP Coordinator, which they say "notes that Mr. Battle did not file any additional ARP complaints relating to the March 28, 2019 incident." ECF No. 12-1 at 8. The affidavit does not support that statement—it only says that Plaintiff did not appeal the April 9 dismissal. ECF No. 12-3.

Defendants rely on that affidavit, as well as a second one from the director of the IGO, to assert that Plaintiff did not appeal the denial to either the Commissioner or the IGO. ECF No. 12-1 at 7–8; ECF No. 12-3; ECF No. 12-4. However, Plaintiff filed a supplement to his Complaint on November 7, 2019, stating that he "tried to appeal" to the IGO in June 2019 but they "refuse to respond." ECF No. 6 at 1. Included in that filing was a page-long appeal addressed to "Commissioner of Corrections/Inmate Grievance Office," although there is nothing on the page to show if or when this appeal was filed. *Id.* at 7. Plaintiff also filed a request for a "copy of his appeal" with the Court on April 3, 2020. ECF No. 15.

Based on these facts, summary judgment is precluded on the issue of exhaustion. First, Plaintiff's Opposition argues that "[t]he failure on the part of the institution to provide Plaintiff with the [COMAR 12.02.28.11(B)(2)(d)] notice relieves Plaintiff from engaging in further appeals." ECF No. 17 at 2. Indeed, faced with an identical situation—in which a plaintiff's ARP

---

[10] Another document in Plaintiff's supplement to the Complaint contains three "Receipts of Warden's Response" from April 2019, indicating that he filed a third ARP complaint during that period with the case number 0698-19, but Plaintiff does not provide a copy of the document and it is not clear whether the third ARP complaint relates to the subject matter at issue here. ECF No. 6 at 3.

complaint was dismissed under COMAR 12.02.28.11.B(1)(h), but the notice did not state that the plaintiff could appeal the decision to the Commissioner—a court in this District determined that it could not "say that [the plaintiff]'s efforts to exhaust his administrative remedies as to his excessive force claim were not thwarted" and proceeded to consider the merits of the plaintiff's claim. *Shiheed v. Harding*, No. CV GLR-18-1906, 2019 WL 3413504, at *8 (D. Md. June 19, 2019), *aff'd*, 802 F. App'x 765 (4th Cir. 2020).[11] For the same reason, Defendants' request for summary judgment on the issue of exhaustion is denied.

Second, there is a factual question regarding whether Plaintiff attempted to file an appeal—Defendants say he never filed one, ECF No. 12-1 at 7–8; ECF No. 12-3; ECF No. 12-4, while Plaintiff indicates that he did, or at least that he attempted to do so, *see* ECF No. 6 at 1, 7; ECF No. 15. This presents a genuine dispute of material fact that precludes summary judgment.

Third and finally, even if it were clear that Plaintiff did not appeal the dismissal of his April 9 ARP complaint, further administrative remedies may have been unavailable to him given the ongoing IID investigation.[12] The Supreme Court addressed this precise question in *Ross v. Blake*:

> The facts of this case raise questions about whether, given these principles, Blake had an "available" administrative remedy to exhaust. As explained earlier, Ross's exhaustion defense rests on Blake's failure to seek relief through Maryland's ARP process, which begins with a grievance to the warden and may continue with appeals to the Commissioner of Correction and the IGO. That process is the standard method for addressing inmate complaints in the State's prisons: The Inmate Handbook provides that prisoners may use the ARP for "all types" of grievances (subject to four exceptions not relevant here), including those relating to the use of force. But recall that Maryland separately maintains the IIU [precursor to IID[13]] to look into charges of staff misconduct in prisons, and the IIU did just that here. Blake urged in the courts below that once the IIU commences such an inquiry, a prisoner cannot obtain relief through the standard ARP

---

[11] Additionally, here, as in *Shiheed*, the dismissal notice cited the wrong COMAR provision—12.02.2.11.B(h) instead of 12.02.28.11.B(h). *See* ECF No. 12-2 at 1; *Shiheed*, 2019 WL 3413504, at *8 n.12.
[12] Plaintiff raises this issue in his *pro se* Opposition. ECF No. 19 at 2.
[13] *See Montgomery v. Warden*, No. CV ELH-15-3005, 2017 WL 6368661, at *4 (D. Md. Dec. 12, 2017); *Williams v. Dovey*, No. CV DKC-15-1891, 2016 WL 810707, at *2 n.6 (D. Md. Mar. 2, 2016).

> process—whatever the Handbook may say to the contrary. . . . [B]oth sides' submissions, although scattershot and in need of further review, lend some support to Blake's account—while also revealing Maryland's grievance process to have, at least at first blush, some bewildering features.

*Ross v. Blake*, 136 S. Ct. 1850, 1860 (2016). The Court went on to ask:

> If the IGO thinks the wardens wrong to dismiss complaints because of pending IIU investigations, why does it not say so and stop the practice? Conversely, if the IGO thinks the wardens right, how can it then issue merits decisions? And if that really is Maryland's procedure—that when an IIU investigation is underway, the warden (and Commissioner of Correction) cannot consider a prisoner's complaint, but the IGO can—why does the Inmate Handbook not spell this out? Are there, instead, other materials provided to prisoners that communicate how this seemingly unusual process works and how to navigate it so as to get a claim heard?

*Id.* at 1861–62. The Court ultimately remanded the case for further consideration of whether administrative remedies were truly "available" to exhaust, instructing that the suit should be allowed to proceed if: (i) "the IIU investigation into his assault foreclose[d] the possibility of relief through the standard grievance procedures;" (ii) the procedures were "unknowable by an ordinary prisoner" or "the system so confusing that no such inmate could make use of it;" or (iii) "Maryland officials thwarted the effective invocation of the administrative process through threats, game-playing, or misrepresentations, either on a system-wide basis or in the individual case." *Id.* at 1862.

Since *Ross* was decided, courts in this District have generally found that an IID investigation renders claims either exhausted or unavailable. *See, e.g.*, *Stokes v. Davis*, No. CV JKB-16-3239, 2018 WL 656445, at *10 (D. Md. Feb. 1, 2018) ("[S]ome procedures were unavailable to [the plaintiff] due to the Defendants' misrepresentation that an IID investigation into his allegations was underway."); *Toran v. Leply*, No. CV DKC-16-3731, 2017 WL 2645727, at *4 (D. Md. June 20, 2017) ("There is no indication in either the regulations or in the response provided to Toran that further efforts to address his ARP claim would resume after the IID

16

investigation was terminated, or that an appeal of his ARP complaint would not simply be dismissed. In light of these considerations, this court does not find dismissal without prejudice on the basis that Toran did not exhaust administrative remedies legally sound or well-reasoned."); *Oakes v. Dep't of Pub. Safety*, No. CV GLR-14-2002, 2016 WL 6822470, at *5 (D. Md. Nov. 18, 2016) ("At bottom, the Court concludes [the plaintiff] exhausted his administrative remedies because an IIU investigation into [the plaintiff's] claims foreclosed the ARP process, rendering his administrative remedies unavailable."); *Brightwell v. Hershberger*, No. CV DKC 11-3278, 2016 WL 4537766, at *9 (D. Md. Aug. 31, 2016) ("Because the existence of an IIU investigation shuts down the ARP process and thus exhausts administrative remedies for complaints that would typically fall within the ARP jurisdiction, Plaintiff met his burden to exhaust upon the initiation of that investigation."). The cases that have found claims unexhausted despite the involvement of IID are distinguishable. In *Walker*, for example, IID was investigating a related but separate question, and "[n]either the Warden nor the Commissioner of Corrections rejected [the plaintiff]'s ARP grievance on the grounds that there was also an IID investigation," instead considering and denying it on the merits. *Walker v. W. Corr. Inst.*, No. CV TDC-15-2111, 2016 WL 3351565, at *4 (D. Md. June 13, 2016). And, in *Shiheed v. Webb*, "[a] detective at IID was notified of the incident but no case number was assigned and IID did not take over investigation of the use of force." No. CV GLR-16-3166, 2019 WL 3220122, at *8 (D. Md. July 16, 2019), *appeal dismissed*, No. 19-7547, 2019 WL 8504705 (4th Cir. Dec. 17, 2019). Thus, the ARP process remained available. In this case, however, IID investigated the March 28, 2019 incident, and Plaintiff's ARP complaints were dismissed on that basis.

Here, the Court cannot perform the fact-intensive inquiry outlined in *Ross* because the parties do not provide evidence regarding whether the administrative remedies that Plaintiff did

not pursue—assuming he did not pursue them—were unavailable to him. For instance, the existing record does not indicate whether an IID investigation meaningfully forecloses the possibility of further engagement in the ARP process or whether this "bewildering" and "unusual" process is sufficiently and clearly conveyed to inmates. Nevertheless, because, since *Ross*, courts in this District have found an IID investigation renders claims either exhausted or unavailable, the fact that Plaintiff's ARP complaints were dismissed due to an ongoing IID investigation provides an additional ground for denying summary judgment on the issue of exhaustion.

### D. Motion to Strike Appearance

On June 11, 2020, counsel for Plaintiff, Bert Kapinus, filed a motion "pursuant to Fed. R. Civ. P. § 101, for leave to strike his appearance," understood to be a Motion to Withdraw brought under Local Rule 101.2. ECF No. 20 at 1. In his motion, Mr. Kapinus referenced Plaintiff's filing of a *pro se* Opposition as well as filing for discovery and stated that "[i]t appears that Mr. Battle wishes to advocate on his own behalf," making "it difficult for counsel to continue his representation." *Id.* Mr. Kapinus also attached a notice letter sent to Plaintiff on April 30, 2020, stating that Mr. Kapinus intends to file an enclosed motion to strike his appearance in seven days and advising Plaintiff to have other counsel enter an appearance or to notify the clerk if he intends to represent himself. *Id.* at 3.

Local Rule 101.2(a) requires counsel to file a certificate with the motion to withdraw containing "(a) the name and last known address of the client, and (b) that a written notice has been mailed to or otherwise served upon the client at least seven (7) days previously advising the client of counsel's proposed withdrawal and notifying the client either to have new counsel enter an appearance or to advise the Clerk that the client will be proceeding without counsel." Loc. R.

101.2(a) (D. Md. 2018). Although Mr. Kapinus has not precisely complied with this rule, the letter attached to his motion contains the required information, and the Motion to Withdraw Appearance will be granted.

### IV.   CONCLUSION

Accordingly, Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 12, is granted, in part, and denied, in part. Plaintiff's Motion to Strike Appearance of Attorney, ECF No. 20, is granted. A separate Order follows.

Dated: March 29, 2021                                                  /s/
                                                                GEORGE J. HAZEL
                                                                United States District Judge